## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| C.M. and R.M., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 24-cv-02122 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| Health Care Service Corporation, | ) | |
| d/b/a/ Blue Cross Blue Shield of Texas, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

C.M. and R.M bring this lawsuit against Defendant Health Care Service Corporation, which does business as Blue Cross and Blue Shield of Texas ("Blue Cross").[1] Blue Cross, which managed C.M.'s employer-based health insurance plan, denied benefits for substance abuse and mental health services for R.M., a minor, which R.M. received at two different residential treatment facilities in 2021. Plaintiffs claim Blue Cross's denial of benefits violated the Employee Retirement Income Security Act of 1974 ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act"). In filing this lawsuit, plaintiffs seek to recover benefits due under their health insurance plan. Additionally, they seek equitable relief for Blue Cross's alleged Parity Act violations and its alleged failure to conduct a full and fair review of their claims. Blue Cross moves to dismiss plaintiffs' complaint in its entirety. For the reasons stated herein, the motion to dismiss (dkt. 11) is granted in part and denied in part without prejudice.

---

[1] This court has subject matter jurisdiction under 29 U.S.C. § 1131(a)(1)(b), and venue is proper under § 1391(b).

## BACKGROUND[2]

On March 13, 2021, R.M. was admitted to SUWS of the Carolinas ("SUWS"), which operated an outdoor behavioral health program, in North Carolina. R.M. received services for substance abuse, ADHD, impulse control and conduct disorders, severe and recurrent major depressive disorder, and post-traumatic stress disorder. R.M. received treatment at SUWS until March 19, 2021, and two days later was admitted to Vista Magna ("Vista"), a residential treatment center in Utah. There too, R.M was treated for substance abuse and mental health challenges.

C.M., R.M.'s stepmother, sought reimbursement for costs associated with R.M.'s treatment at SUWS through her health insurance plan,[3] which Blue Cross managed and administered. Their plan is an employee welfare benefits plan of which C.M. was a participant and R.M. was a beneficiary. On September 22, 2021, Blue Cross denied coverage, explaining to plaintiffs only that R.M.'s treatment at SUWS "is excluded under your Health Care Plan." (Dkt. 1 ¶ 10.) C.M. appealed Blue Cross's denial of coverage and argued that that the terms of her health insurance plan provided coverage for R.M.'s treatment. In support, C.M. asserted that SUWS was licensed by the state, staffed by qualified licensed professionals, and compliant with

---

[2] The facts are taken from the well-pleaded allegations in the complaint and are presumed to be true for the purpose of resolving the instant motion. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

[3] Blue Cross attached to its motion to dismiss a copy of plaintiffs' health insurance plan. (*See generally* Dkt. 11-1 at 5-154.) Because plaintiffs refer to their insurance plan in the Complaint and because it is central to plaintiffs' claims, the court considers the document in resolving the defendant's motion to dismiss. *See, e.g., 188 LLC* v. *Trinity Indus., Inc*., 300 F.3d 730, 735 (7th Cir. 2002) ("It is [] well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.'")

state regulations. She further argued that ERISA entitled her to a full and fair review of her claim and that Blue Cross's denial of coverage violated the Parity Act.

Blue Cross upheld its denial of coverage for R.M.'s treatment at SUWS based on the following rationale:

> "Administrative review of the appeal request, the claim history, and the member's medical benefits has been conducted. After review, we have determined the charges are correctly denied as this service is not covered by your contract. This concludes our review; we regret our outcome couldn't be more favorable."

(Dkt. 1 ¶ 18.)

Plaintiffs allege that, in its letter, Blue Cross further elucidated that R.M.'s treatment at SUWS was considered an inpatient hospital stay and cited a provision of their plan stating, "The benefits as described in this Benefit Booklet are not available for" … [b]ehavioral health services provided at … wilderness programs[.]" (Dkt. 1 ¶¶ 18, 19, 52.)

C.M. also sought preauthorization from Blue Cross for R.M.'s treatment at Vista, as was required under the terms of their health insurance plan. Blue Cross informed Vista that it would not preauthorize coverage for R.M.'s treatment at Vista because the facility did not provide 24-hour onsite nursing services. Blue Cross never informed plaintiffs of this reasoning, in writing or otherwise. Instead, Blue Cross sent plaintiffs an "Explanation of Benefits" document that stated a different rationale: that Vista had not responded to Blue Cross's request for information.

C.M. subsequently appealed Blue Cross's refusal to preauthorize coverage for R.M.'s treatment. C.M. argued that R.M.'s treatment at Vista is covered under the terms of the plan, that Blue Cross failed to provide a full and fair review of their claim, and that Blue Cross's denial of coverage violated the Parity Act. Blue Cross did not respond to her appeal.

C.M. incurred over $110,000 in medical expenses for R.M.'s treatment at both facilities. Plaintiffs maintain that Blue Cross should have paid for these medical expenses through their health insurance plan.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. To withstand the motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a Fed. R. Civ. P. 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Northwestern Univ.*, 63 F.4th 615, 630 (7th Cir. 2023).

## ANALYSIS

In Count I, plaintiffs seek recovery of benefits for R.M.'s treatment at SUWS and Vista under ERISA §§ 1132(a)(1)(B). In Count II, plaintiffs seek equitable relief on the basis that the terms of their health insurance plan violated the Parity Act pursuant to section 1132(a)(3). In Count III, plaintiffs allege that Blue Cross failed to comply with ERISA's claims procedures in violation of section 1133. Blue Cross moves to dismiss each of these claims. Because plaintiffs' claim stated under Count I rests partially on their Parity Act claim, the court begins there.

4

A. **Parity Act Claims (Count II)**

Plaintiffs seek equitable relief for Blue Cross's alleged violations of the Parity Act. *See* 29 U.S.C. § 1185a.[4] Blue Cross contends that plaintiffs have not plausibly stated a claim upon which relief may be granted.

Congress passed the Parity Act to ensure that health insurance plans would confer benefits for mental health and substance abuse disorders at parity with medical and surgical benefits.[5] *See Smith* v. *Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 385 (S.D. Ind. 2021) (The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans.") The Parity Act does not operate as a benefits mandate. *Munnelly* v. *Fordham Univ. Faculty & Admin. HMO Ins. Plan*, 316 F. Supp. 3d 714, 731 (S.D.N.Y. 2018). Instead, it prohibits health insurance plans from imposing treatment limitations on benefits for mental health and substance abuse disorder that do not apply to analogous medical and surgical benefits. Further, the Parity Act prohibits covered plans from imposing treatment limitations that are "more restrictive than ... treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). The Parity Act covers "quantitative" treatment limitations, such as a cap on the number of annual visits, *see* 45 C.F.R. §

---

[4] There is no independent private right of action under the Parity Act, but "portions of the law are incorporated into ERISA and may be enforced using the civil enforcement provisions in [29 U.S.C. § 1132]." *Gallagher* v. *Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quotation omitted).

[5] While the court adheres to the statutory distinction between "mental health benefits" and "medical or surgical benefits", it "recognize[s] that mental conditions are themselves medical conditions." *Midthun-Hensen on behalf of K.H.* v. *Grp. Health Coop. of S. Cent. Wisconsin, Inc.*, 110 F.4th 984, 986 (7th Cir. 2024).

146.136(a), as well as "nonquantitative" treatment limitations. 29 C.F.R. §§ 2590.712(a), (c)(4). The latter include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* The plaintiffs' claim in this lawsuit only pertains to non-quantitative treatment limitations.

Courts recognize "facial" challenges as well as "as-applied" challenges under the Parity Act. *See Midthun-Hensen* v. *Grp. Health Coop. of S. Cent. Wisconsin, Inc.*, No. 21-CV-608-SLC, 2022 WL 1442842, at *8 (W.D. Wis. May 6, 2022). While a facial challenge is based on the express terms of the plan, an "as-applied" challenge requires plaintiffs to identify facially neutral plan terms that are applied differently or more restrictively in practice on mental health or substance abuse disorder treatments. *Id.* The Seventh Circuit has not yet articulated a clear pleading standard for either type of Parity Act claim. *See C.W.* v. *United Healthcare Servs., Inc.*, No. 23-CV-04245, 2024 WL 3718203, at *2 (N.D. Ill. Aug. 8, 2024); *Brian W.* v. *Health Care Serv. Corp.*, No. 24 CV 2168, 2025 WL 306365, at *6 (N.D. Ill. Jan. 27, 2025). Some district courts focus on the issue of whether "the plaintiff plausibly allege[d] that their health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical [or] surgical services[]" *C.W.*, 2024 WL 3718203, at *3; *see also Smith*, 526 F. Supp. 3d at 388 (focusing on the same question).[6] This court follows suit.

---

[6] Other courts in this circuit adopt a four-part analysis to evaluate whether a plaintiff have plausibly alleged a Parity Act claim: (1) Is the relevant health insurance plan subject to the Parity Act? (2) Does the plan cover medical and surgical benefits as well as benefits for substance abuse and mental health? (3) Does the plan impose a treatment limitation for substance abuse and mental health that is more restrictive than such a limitation on medical or surgical benefits? Finally, (4) is the substance abuse and mental health benefit being compared to a medical or surgical benefit of the same classification? *Brian W.*, 2025 WL 306365, at *6; *Alice F.*, 367 F. Supp. 3d at 828. If this court were to apply this four-part test, the result would be no different.

1. **Parity Act Claim with Respect to SUWS**

Plaintiffs bring a facial challenge with respect to Blue Cross's denial of coverage for

R.M.'s treatment at SUWS. (*See* Dkt. 1 ¶ 53.)[7] They argue that, as written, the plan's wilderness

exclusion only precludes benefits for mental health and substance abuse disorder treatments. The

court agrees. As stated previously, the plan's wilderness exclusion is found in two places. First,

the plan excludes coverage for "behavioral health services provided [at] … wilderness programs"

in the schedule of Medical Limitations and Exclusions. (Dkt. 11-1 at 70.) Second, the plan

excludes coverage for wilderness programs in the definition of "residential treatment center."

(Dkt. 11-1 at 87). The parties do not dispute that residential treatment centers provide mental

health services. (*Id.*) (residential treatment centers do "not include … wilderness programs … or

other facilities that provide primarily a supportive environment"). Nor does Blue Cross dispute

that the plan's wilderness exclusion as written only pertains to mental health and substance abuse

disorders.

Plaintiffs argue that the wilderness exclusion does not preclude coverage for analogous

medical or surgical facilities. (Dkt. 15 at 22.) *See also Candace B.* v. *Blue Cross*, No. 2:19-CV-

00039, 2020 WL 1474919, at *7 (D. Utah Mar. 26, 2020) (denying motion to dismiss a facial

Parity Act challenge where "[p]laintiffs [] identified the wilderness program exclusion as

applying to intermediate level mental health and substance abuse treatment but not to the

analogous intermediate level medical/surgical treatment," namely skilled nursing facilities and

rehabilitation facilities.) In contrast, a court dismissed a complaint where the plaintiff had not

"point[ed] to [something] in the Plan or the administrative record that show[ed] that the

---

[7] Plaintiffs also alleged an "as-applied" challenge based on facially neutral plan terms in their Complaint (*see* dkt. 1 ¶¶ 61-63) but abandoned this claim in their Response to Blue Cross's Motion to Dismiss. (Dkt. 15 at 18.) They write, "At issue in this case are purported facial disparities based on the plain language of the Plan." (Dkt. 15 at 18.)

wilderness program exclusion only applied to mental health treatment." *Microsoft Corp.*, 2018 WL 2684387, at *7. Here, plaintiffs have pointed to provisions that are only relevant to behavioral health treatments. This is sufficient for this claim to survive Blue Cross's motion to dismiss. As stated in *Gallagher*, 339 F. Supp. 3d at 258, "[a]t least at the motion to dismiss stage, the relevant comparison is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy."[8]

Blue Cross does not directly respond to plaintiffs' facial challenge. Instead, it argues that the wilderness exclusion is applied uniformly to bar coverage for all supportive services.[9] (*See*

---

[8] In *Michael D.* v. *Anthem Health Plans of Kentucky, Inc.*, the plaintiff's treatment in a wilderness therapy program was not covered under Anthem's blanket exclusion for wilderness programs. 369 F. Supp. 3d 1159, 1176 (D. Utah 2019). There, the court noted that plaintiffs "Plans should not be able to exclude mental health treatments only because … there is not a clear analog to wilderness camps in the medical or surgical field." *Id.* at 1176. While it did not reach the question of whether the defendant violated the Parity Act at summary judgment, the court commented that excluding coverage for "mental health treatment merely because [the treatment] occurs outdoors appears to place a limitation on mental health that does not apply to medical or surgical treatments." *Id.*

[9] It appears that Blue Cross never articulated that they denied coverage for R.M.'s treatment at SUWS because the services he received were primarily supportive. The court is limited to considering only the rationale given to plaintiffs during the administrative process for its denial of benefits. *See R.E.* v. *Blue Cross Blue Shield of Ill.*, No. 2:22-cv-00296-RJS-DBP, 2023 U.S. Dist. LEXIS 229908 at *12 (D. Utah Dec. 27, 2023) ("[T]he court is limited to considering 'only those rationales that were specifically articulated in the administrative record as the basis for denying the claim[]'") (quoting *Spradley* v. *Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012)). At this point in the litigation, plaintiff alleges that Blue Cross only provided one reason for why it denied coverage for R.M.'s treatment at SUWS: the plan does not cover wilderness programs. (Dkt. 1 ¶ 19.)

Even if the court were to consider Blue Cross's argument that its denial of coverage stemmed from a more general bar for "primarily supportive services," there is a factual dispute as to whether the services R.M. received were "primarily supportive" or not. While Blue Cross cites to *Alice F.*, 367 F. Supp. 3d at 828, where the court concluded there was no Parity Act violation because coverage for the plaintiff's treatment at a wilderness program was justified under the plan's uniform bar for supportive services, that case was resolved at summary judgment. Whether the treatment R.M. received was "primarily supportive" remains contested and is a question ripe for discovery.

Dkt. 11 at 10.) Blue Cross says that SUWS offers "primarily [a] supportive environment," such that treatments offered at the facility are not covered under the plan and no Parity Act problem exists. (*Id.*) Plaintiffs do not agree that the treatment R.M. received was "primarily supportive." As written, any wilderness program offering behavioral health services, regardless of whether it provides therapeutic benefits, would not be covered under the plan. (Dkt. 11-1 at 70) (Coverage is not available for "behavioral health services provided [at] … wilderness programs."). Blue Cross's reliance on cases dealing with "as-applied" challenges to the Parity Act is thus inapposite. *See, e.g.*, *A.G. by & Through N.G.* v. *Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 837, 841-42 (S.D. Ohio 2019) (dismissing facially neutral "wilderness camp" exclusion); *Microsoft Corp.*, 2018 WL 2684387 at *7 (dismissing as-applied challenge to wilderness exclusion).[10] Dismissal of this claim is not warranted where a facial disparity in the plan exists.

## 2. Parity Act Violation for Treatment at VISTA

Plaintiffs argue next that Blue Cross's denial of payment for R.M.'s treatment at Vista relies on plan terms that also facially violate the Parity Act.[11] As they note, the plan requires patients at residential treatment centers be "medically monitored with 24-hour medical

---

[10] Plaintiffs abandon their allegations that Blue Cross violated the Parity Act by excluding coverage for wilderness programs that have revenue billing codes. (*See* Dkt. 1 at ¶¶ 47-56). As a result, the court deems these allegations as waived. *Bonte* v. *U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss] – as the [plaintiffs] have done here – results in waiver.")

[11] Plaintiffs also appear to have abandoned a separate "as-applied" Parity Act claim originally pleaded in the Complaint. They pleaded that the "facially neutral" 24-hour onsite nursing requirement as applied to residential treatment facilities violates the Parity Act "because 24/7 onsite nursing care is often part of generally accepted standards of care for intermediate level inpatient medical and surgical treatment but does not fall within generally accepted standards of care and is neither expected nor required for residential treatment facilities." (Dkt 1 ¶ 61.) But plaintiffs unambiguously state in their response to Blue Cross's motion to dismiss that "[a]t issue in this case are purported facial disparities based on the plain language of the Plan." (Dkt. 15 at 18.)

availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Chemical Dependency." (Dkt. 11-1 at 87.)

Plaintiffs allege that analogous medical or surgical facilities, like skilled nursing facilities, do not share a similar 24-hour onsite nursing requirement under the terms of the plan. (Dkt. 1 ¶ 29.) For example, the plan requires skilled nursing facilities to be "(1) Licensed in accordance with state law (where state law provides for licensing of such facility); or 2. Medicare or Medicaid eligible as a supplier of skilled inpatient nursing care." (Dkt. 11-1 at 88.) Thus, skilled nursing facilities can be covered under the terms of the plan even if they lack 24-hour onsite nursing requirement, so long as these facilities are compliant with state law or relevant Medicare or Medicaid rules. Plaintiffs argue that the only medical or surgical facility that is subject to the 24-hour onsite nursing available is a hospital, which provides a higher-level of acute care than do the analogues to residential treatment centers such as Vista. (Dkt. 15 at 7; Dkt. 11-1 at 79.) Blue Cross argues that, in practice, skilled nursing facilities also are required to have 24-hour onsite nursing because that is required under state licensure and Medicaid and Medicare eligibility rules; thus, they say the plan does not violate the Parity Act.

A facial challenge, such as plaintiffs bring here, "focuses on the terms of a plan." *Nancy S.* v. *Anthem Blue Cross and Blue Shield*, No. 2:19-cv-00231-JNP-DAO, 2020 WL 2736023, at *3; *see* 29 C.F.R. § 2590.712(c)(4)(i) (specifying that the parity requirement applies to "the terms of the plan (or health insurance coverage) as written and in operation.") In similar cases, courts in this circuit have concluded that plaintiffs alleged a plausible Parity Act violation by showing that the 24-hour onsite nursing requirement was imposed only on residential treatment centers and not their medical and surgical analogues. *See R.T and J.T* v *Blue Cross Blue Shield of Illinois and the Option Care Health Benefits Plan*, 23-cv-16953 (April 16, 2024) (J. Kendall)

(unpublished) (denying a motion to dismiss because "[t]he language of the Plan" only required

residential treatment centers to provide 24-hour onsite nursing). In *Brian W.*, 2025 WL 306365,

at *7 (cleaned up and emphasis in original), the court analyzed a facial challenge and found that:

> … the plan's 24-hour onsite nursing requirement [is] "*in addition to*" other requirements, such as licenses that might be required by state or federal law. [The plaintiff] is therefore correct that on its face the policy imposes a separate and distinct requirement on residential treatment centers—24-hour onsite nursing care—that it does not impose on SNFs.

Likewise, here, plaintiffs argue that the disparate plan terms create a situation in which

Blue Cross can deny coverage for mental health benefits even though residential treatment

centers do not need 24-hour nursing on site. On this point, plaintiffs allege in their complaint that

"no licensing, regulatory, or accreditation entities require 24-hour onsite nursing services as part

of generally accepted standards of care." (Dkt. 1 ¶ 58.) In contrast, plaintiffs argue that the Plan's

terms as written do not require skilled nursing facilities to similarly employ "superfluous"

staffing beyond what would be required of them to remain licensed. (Dkt. 15 at 19.) Blue Cross

disputes this characterization because the 24-hour onsite nursing requirement adheres to

generally acceptable standards of medical care. Referencing the American Academy of Child &

Adolescent Psychiatry's Principles of Care for Treatment of Children ("AACAP RTC

Principles"), Blue Cross contends that having 24-hour onsite nursing is one of two ways that a

residential treatment center can adhere to generally accepted standards of medical care.

In support, Blue Cross points to another case in this circuit, *C.B.* v. *Blue Cross & Blue

Shield of Illinois*, No. 23-CV-01206, 2024 WL 1003687 (N.D. Ill. Jan. 9, 2024). There, the

plaintiff did not dispute that the 24-hour nursing requirement was one way that residential

treatment centers could comply with the generally accepted standard of care. In this case,

plaintiffs say the court should not accept these "guidelines," which is the correct approach at this

stage of the litigation. Also distinguishing *C.B.*, the court noted in *Brian W.*: "the standard of care is generally a factual question appropriate for summary judgment or trial, not a motion to dismiss." 2025 WL 306365, at *7. And here too, Blue Cross "does not explain why the [c]ourt can consider [] extrinsic evidence, which is not referenced in the complaint, at this phase of litigation." *Id.*[12] Plaintiffs have plausibly alleged that the plan's 24-hour onsite nursing requirement violates the Parity Act.

### B. Denial of Plan Benefits (Count I)

Plaintiffs seek to recover benefits they allege were owed to them for R.M.'s treatment at SUWS and Vista. 29 U.S.C. § 1332(a)(1)(B). Their argument rests on two different theories: first, that they are entitled to coverage for R.M.'s treatment at both facilities under the terms of their health insurance plan and second, that Blue Cross's denial of coverage relies on plan terms that violate the Parity Act. Although plaintiffs have not sufficiently stated that the existing plan terms confer benefits for R.M.'s treatments at either facility, because they plausibly alleged Parity Act violations with respect to Blue Cross's denial of coverage at both facilities, their claim for benefits under 29 U.S.C. § 1132(a)(1)(B) survives the motion to dismiss.

---

[12] The Seventh Circuit has permitted courts to consider documents "referred to in the plaintiff's complaint *and* [] central to his claim." *Wright* v. *Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). While plaintiffs referred generally to "[g]enerally accepted standards of medical practice" (dkt. 1 ¶ 59), plaintiffs do not reference the American Academy of Child & Adolescent Psychiatry's Principles of Care For Treatment of Children ("AACAP RTC Principles") that the defendant relies upon in its motion. (See Dkt. 11 at 13.) Accordingly, the court does not consider this document for the purposes of resolving the present motion.

Assuming arguendo the court were to accept that Blue Cross's preferred standard of care, it is not evident to the court that the AACAP RTC principles upon which Blue Cross relies require residential treatment center to have 24-hour onsite nursing. The principles, as Blue Cross itself admits, state that a residential treatment center would be compliant with the generally acceptable standards of care by employing a "mental health worker" (a person with bachelor's degree in psychology, sociology, social work, counseling, nursing education, rehabilitation counseling and at least one year of experience in mental health services) to provide 24-hour onsite services in lieu of a registered nurse. (Dkt. 11 at 12–13.)

ERISA was enacted by Congress "to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 208 (2004) (quoting 28 U.S.C. § 1001(b)). ERISA provides a private right of action for participants or beneficiaries "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Davila*, 542 U.S. at 210 ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits."). When plaintiffs bring ERISA claims, plan beneficiaries are "essentially asserting … contractual rights under an employee benefit plan," as such claims "are creatures of contract law." *Syrstad* v. *NECA-IBEW Welfare Tr. Fund,* No. 23-2088, 2024 WL 4251311, at *8 (C.D. Ill. Aug. 21, 2024) (quoting *Tolle* v. *Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992)).

Accordingly, to properly state a claim for recovery of benefits, plaintiffs must "provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *LB Surgery Ctr., LLC* v. *United Parcel Serv. of Am., Inc.*, No. 17 C 3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017) (quoting *Sanctuary Surgical Center, Inc.* v. *UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013)); *J.S.* v. *Blue Cross Blue Shield of Illinois*, No. 2:22-CV-00480, 2024 WL 4308925, at *6 (D. Utah Sept. 26, 2024) (emphasizing "[t]he statute makes clear that claims brought under ERISA to recover benefits depend entirely on the terms of the plan.") (citation and internal

quotations omitted). In this case, plaintiffs have not plausibly alleged that R.M.'s treatment at SUWS or at Vista is covered under the existing terms of their health insurance plan.

### A. Recovery of Benefits for R.M.'s Treatment at SUWS

Turning first to R.M.'s treatment at SUWS, Blue Cross directs the court to existing plan language that excludes coverage for wilderness programs. Enumerated in its section outlining Medical Limitations and Exclusions, the plan states, "[t]he benefits as described here in this Benefit Booklet are not available for … behavioral health services provided [at] … wilderness programs[.]" (Dkt. 11-1 at 67-70.) The plan also defines residential treatment centers to "not include … wilderness programs … that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities." (Dkt. 11-1 at 87). Plaintiffs do not dispute that their health insurance plan facially excludes coverage for behavioral health services provided at wilderness programs.

Instead, plaintiffs' theory of entitlement to benefits for R.M.'s treatment is premised on their argument that SUWS meets the Plan's definition of "mental healthcare." (Dkt. 1 ¶ 13.) Citing arguments they made during the pre-litigation administrative appeals process, plaintiffs note that SUWS was licensed by the State of North Carolina, accredited by professional organizations, staffed by licensed clinical professionals, and compliant with state regulations.[13]

---

[13] Plaintiffs assert in their Response to Defendant's Motion that R.M.'s treatment at SUWS could be covered under additional Plan terms, including the Plan's definitions of "providers", "other providers", and "other licensed facilit[ies]," (dkt. 15 at 10, 13) but the court disregards these allegations. It is well established that plaintiffs cannot amend a complaint through a response to a motion to dismiss. *Shanahan* v. *City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). While plaintiffs may have put forth such arguments in pre-litigation appeals, they failed to do so in the operative complaint in this federal lawsuit.

Further, Plaintiffs characterize R.M.'s treatment at SUWS and Vista as "medically necessary" in their Complaint. (Dkt. 1 ¶ 41.) However, they have abandoned this theory of entitlement to benefits. *Alioto* v. *Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.")

14

(Dkt. 1 ¶¶ 13-14; Dkt 15 at 6.) However, plaintiffs fail to articulate how satisfying these other requirements somehow exempts SUWS from the Plan's wilderness exclusion.

Ultimately, the court is limited to evaluating whether the terms of a plan in a particular case entitle plaintiffs to the benefits they seek to recover. *See Alice F.* v. *Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 828 (N.D. Ill. 2019) (noting that "[b]ecause each [ERISA] contract must be interpreted according to its own terms, the results of these cases are, predictably, all over the map."). The Seventh Circuit has directed courts "to interpret terms of ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Swaback* v. *Am. Info. Techs. Corp.*, 103 F.3d 535, 540–41 (7th Cir. 1996).

Under this interpretive canon, the Plan's wilderness exclusion enumerated in the Medical Limitations and Exclusions section as written bars coverage for behavioral wilderness programs. Other district courts have dismissed lawsuits where wilderness programs are unambiguously excluded under the terms of health insurance plans – as is the case here. *See Vorpahl* v. *Harvard Pilgrim Health Ins. Co.*, No. 17-cv-10844-DJC, 2018 WL 3518511, at *2 (D. Mass. 2018) (denying plaintiff's claim where "the text of the [wilderness] exclusion does unambiguously apply to the services provided by" an outdoor treatment center); *see also Roy C.* v. *Aetna Life Ins. Co.*, No. 2:17cv1216, 2018 WL 4511972, at *2 (D. Utah 2018) (granting judgment on the pleadings for defendant because "the Plan at issue in this case expressly and clearly excludes from coverage '[t]reatment in wilderness programs or similar programs' ..., and therefore, Plaintiffs' claim for benefits for treatment at [wilderness treatment center] is expressly and clearly excluded from coverage.")

Plaintiffs further argue that the wilderness exception only excludes wilderness programs that "provide primarily a supportive environment and address long-term social needs, even if

counseling is provided in such facilities." (Dkt. 11-1 at 87). Plaintiffs differentiate SUWS from boot camps or adventure camps "which are meant to offer entertainment services and are not intended to have any therapeutic value." (Dkt. 1 ¶ 52.) *See A.H. by & through G.H.* v. *Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at \*4 (W.D. Wash. June 5, 2018) (denying motion to dismiss where the plaintiff plausibly alleged that a similar carve out to her plan's wilderness exception entitled her to benefits under her plan.) If this were the end of the story, the court would be convinced that plaintiffs plausibly stated a claim for the recovery of benefits under their plan. However, plaintiffs have not alleged that the Plan's broad wilderness exclusion found in the "Medical Limitations and Exclusions" section somehow exempts wilderness programs that have therapeutic benefits. (*See* Dkt. 11-1 ¶ 70.)

### B. Recovery of Benefits for R.M.'s Treatment at Vista

Blue Cross declined to pre-authorize coverage for R.M.'s treatment at Vista because it did not provide 24-hour onsite nursing services. (*See* Dkt. 1 ¶ 21; Dkt. 11-1 at 87) ("Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Chemical Dependency.")

As general practice, courts are generally limited to considering "only those rationales that were specifically articulated in the administrative record as the basis for denying the claim." *See R.E.* v. *Blue Cross Blue Shield of Ill.*, No. 2:22-cv-00296-RJS-DBP, 2023 U.S. Dist. LEXIS 229908 at \*12 (D. Utah Dec. 27, 2023). Blue Cross never provided plaintiffs the rationale for denying coverage for R.M.'s treatment at Vista it now relies on, namely that Vista lacked 24-hour onsite nursing services. Plaintiffs contend that Blue Cross's failure to communicate the basis for their denial of coverage is the end of the road. However, it is evident to the court, based on allegations in plaintiffs' complaint, that they were on notice of why Blue Cross denied

coverage. (Dkt. 1 ¶¶ 21, 29, 58–64.) The court proceeds in its analysis only on the basis that Blue Cross failed to pre-authorize coverage for Vista because it lacked 24-hour onsite nursing.

Plaintiffs concede that Vista does not offer 24-hour onsite nursing. Instead, they argue that they are entitled to benefits under the terms of the Plan because Vista satisfies other requirements applicable to residential treatment centers. Again, echoing arguments they made during the administrative appeals process, plaintiffs allege that Vista was licensed by the State of Utah, was compliant with state and federal regulations, and was staffed by licensed professionals. That Vista meets these other requirements, though, does not mean that plaintiffs can recover benefits for R.M.'s treatment. *See Roy C.* v. *Aetna Life Ins. Co.*, No. 17 cv 1216, 2018 WL 4511972, at *3 (D. Utah 2018) (finding that plaintiff failed to plead plausible ERISA claim where plaintiff failed to establish how the licensure of the plaintiff's residential treatment center exempted it from other plan requirements); *see also Loran K.* v. *Blue Cross & Blue Shield of Ill.*, No. 19-cv-07694-JSW, 2021 U.S. Dist. LEXIS 205498, at *18 (N.D. Cal. June 17, 2021) (holding that licensure alone was insufficient to entitle plaintiff to coverage where the facility did not comply with the health insurance plan's 24-hour on site nursing requirement). Thus, Plaintiffs have not plausibly stated how Vista is exempt from the 24-hour onsite nursing requirement under any provisions of the plan.[14]

Nevertheless, because plaintiffs have plausibly alleged that the plan terms Blue Cross relied upon to deny coverage, namely the wilderness exclusion and the 24-hour onsite nursing

---

[14] Plaintiffs raise additional theories of entitlement to benefits. First, they argue that Vista was a "provider" or "other provider" for the first time in this federal litigation in response to Blue Cross's motion to dismiss. The court does not consider this argument. *See Shanahan*, 82 F.3d at 781. Although plaintiffs raised this theory during the pre-litigation appeals process, they did not raise the allegations in the operative complaint or attach copies of their appeals to the complaint. Plaintiffs further allege that R.M.'s treatment at Vista was "medically necessary." (Dkt. 1 ¶ 41.) However, they have abandoned this theory of entitlement to benefits. *Alioto*, 651 F.3d at 721.

requirement, violate the Parity Act, they have stated a claim to recover benefits under Count I as well. *See Brian W.* v. *Health Care Serv. Corp.*, No. 24 CV 2168, 2025 WL 306365, at *2 (N.D. Ill. Jan. 27, 2025) (permitting the plaintiff's recovery of benefits claim to survive a motion to dismiss because "a plan provision that would be unlawful under the Parity Act [cannot] be used to deny coverage"); *R.T. and J.T.* v. *Blue Cross Blue Shield of Illinois et al.*, No. 23 C 16953, Dkt. 41 at 2 (N.D. Ill. April 16, 2024) (holding that because "[p]laintiffs plausibly plead … a Parity Act violation and because each of Defendant[']s arguments in favor of [the plaintiff's recovery of benefits claim's] dismissal rest on the assumption that there is no Parity Act violation, the [recovery of benefits claim] survives" the motion to dismiss). As stated in *Brian W.*, a contract provision that violates a statute is void. *See REI Transp., Inc.* v. *C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008).[15]

### C. Full and Fair Review (Counts III)

Plaintiffs contend that Blue Cross breached its fiduciary duties by failing to provide a "full and fair review" of their claims as required under the plan and ERISA. *See* 29 U.S.C. § 1133; *Halpin* v. *W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992). Specifically, ERISA requires that a plan administrator:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

---

[15] Plaintiffs separately seek to recover benefits under Count I due to Blue Cross's failure to provide a "full and fair review" of the denial of their claims. However, "the appropriate remedy for the [p]lan's procedural violation … is not, as the plaintiff argues, an award of benefits." *Kough* v. *Teamsters' Local 301 Pension Plan*, 437 Fed. App'x 483, 488 (7th Cir. 2011). Rather, the appropriate remedy for a procedural violation would be to remand the case to the plan administrator for a "full and fair hearing of the claim." *Schleibaum* v. *Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998). Therefore, plaintiffs have not stated a plausible claim for recovery of benefits under 29 U.S.C. § 1332(a)(1)(B).

29 U.S.C. §§ 1133; 1132(a)(1)(B) (statutory enforcement provision for § 1133 violations).[16]

However, courts do not require strict compliance with ERISA's procedural requirements and instead look to whether plan administrators "substantially complied" with § 1133. *Siebert* v. *Cent. States Se. & Sw. Areas Health & Welfare Fund*, 496 F. Supp. 3d 1152, 1163 (N.D. Ill. 2020) (citing *Halpin*, 962 F.2d at 690). A plan administrator is in substantial compliance with the statute's "full and fair review" mandate if the administrator "provide[d] the unsuccessful claimant with 'a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review,' even if the administrator does not technically meet each and every requirement of ERISA." *Siebert*, 496 F. Supp. 3d at 1164 (citing *Halpin*, 962 F.2d at 690); *see Hackett* v. *Xerox Corp. Long–Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003) (administrator failed to substantially comply with ERISA requirements where the denial letters provided did not explain reasoning behind denial of benefits).

In *Seibert*, the defendant plan administrator did not provide an initial written denial but did send the plaintiff a letter denying an intermediate pre-litigation appeal. The plaintiff asserted that letter did not "sufficiently describe the 'specific reasons' for the decision …, nor … completely describe the 'information necessary ... to perfect the claim.'" 496 F. Supp. 3d. at 1164. Even then, the court found that the defendant substantially complied with ERISA's procedural requirements because letters he provided during the appeals process enabled the claimant to "kn[o]w the basis of defendant's action" and "to fully litigate his administrative appeals and [] press his case in this [c]ourt." *Id*. at 1167. Nothing in the factual record "indicated

---

[16] Furthermore, in this case, plaintiffs allege that the Plan additionally requires Blue Cross to provide a written notice to a beneficiary if a claim is denied or not paid in full. (Dkt. 1 ¶ 70.)

any way in which the procedural or other errors he has identified prevented him from doing so more successfully." *Id*.

*Seibert* is distinguishable from the facts presented here. Blue Cross flouted ERISA's procedural requirements. It did not provide an initial written denial letter or explanation for why it denied pre-authorization for R.M.'s treatment at Vista. It communicated this rationale only to Vista and even then, only verbally. Blue Cross went further to tell Vista that no written notice would be given to plaintiffs. Blue Cross later sent plaintiffs an Explanation of Benefits document that stated a different rationale for why it would deny coverage for R.M.'s treatment at Vista. Blue Cross never responded to plaintiffs' appeal and failed to provide plaintiffs with documents they requested during the appeals process.

Blue Cross does not dispute plaintiff's characterization of its conduct. However, Blue Cross argues that plaintiffs lack standing to bring this claim because they have not alleged that Blue Cross's procedural violations caused them any harm. *Gorgas* v. *Amazon.com, Inc.*, No. 22 CV 5159, 2023 U.S. Dist. LEXIS 109563, at *2 (N.D. Ill. June 23, 2023) (holding that "Article III requires a concrete injury even in the context of a statutory violation" and "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement[.]") Plaintiffs state in their motion that "Had BCBSTX issued any comprehensive written denial, Plaintiffs would have had an "opportunity to provide a substantive response that could have potentially changed the adjudication." (Dkt. 15 at 17 (citing *Zall v. Standard Ins. Co.*, 58 F.4th 284, 297 (7th Cir. 2023)). However, nowhere in the complaint do plaintiffs allege that they were concretely harmed by Blue Cross's failure to comply with the procedural requirements set out by statute and the plan itself.[17]

---

[17] Blue Cross frames its argument as an Article III standing issue, but courts routinely analyze this issue through a different framework. The Seventh Circuit, as well as courts in other jurisdictions, hold

Plaintiffs knew the reasons Blue Cross denied coverage for R.M.'s treatment at both facilities — for SUWS, because the plan excluded wilderness programs, and for Vista, because it did not provide for 24-hour onsite nursing as required by the plan. Plaintiffs did not allege that Blue Cross's violation of procedural requirements impaired their ability to appeal or litigate the matter. While the court does not condone Blue Cross's disregard for its obligations under ERISA to meaningfully engage in a dialogue with plan beneficiaries, plaintiffs have not stated a claim for relief under 29 U.S.C. §1133.

## CONCLUSION AND ORDER

For the reasons stated above, Blue Cross's motion to dismiss [12] is granted in part and denied in part. Count III is dismissed and the motion is denied with respect to Counts I and II. Blue Cross is directed to answer Counts I and II. A scheduling conference will be held on April 23, 2025, at 9:30 a.m. in person in courtroom 2201.


Date: March 27, 2025

_____
U.S. District Judge Joan H. Lefkow

---

that the appropriate remedy for violations of Section 1133 would be remand but only if a plaintiff has shown that she was prejudiced by the defendant's procedural violation. *See Siebert*, 496 F. Supp. 3d at 1166 (collecting cases where courts require a showing of prejudice caused by an ERISA procedural violation before remanding for further review); *see also S.B.* v. *BlueCross BlueShield of Texas*, 719 F. Supp. 3d 1212, 1219–20 (D. Utah 2024) (denying remand although plan administrator failed to provide written explanation of denial of benefits because plaintiffs failed to "explain how they were prejudiced by a lack of full and fair review"). Plaintiffs have not alleged that they were so prejudiced, so remand would be futile.